# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARCUS FOOD CO., | |
| *Plaintiff*, | |
| vs. | Case No. 09-1261-EFM |
| ROBERT DiPANFILO, | |
| *Defendant.* | |

## MEMORANDUM AND ORDER

Plaintiff Marcus Food Company, a Kansas corporation, filed suit against its independent contractor, Defendant Robert DiPanfilo, a Canadian citizen. Defendant failed to appear, and the Court entered an entry of default and default judgment. Five months after the default judgment was entered, Defendant has filed a motion to set it aside arguing every possible bases to have the case dismissed, absent a 12(b)(6) motion.

Before the Court is Defendant Robert DiPanfilo's Motion to Set Aside Default and Default Judgment and Dismiss the Case, or in the alternative, Enlarge Time to File Responsive Pleading (Doc. 11). The motions have been fully briefed. For the following reasons, the Court denies Defendant's motion.

## I. Factual and Procedural Background

Plaintiff Marcus Food Co. ("Marcus") filed its complaint against Robert DiPanfilo on August 28, 2009. In the complaint, it states that Marcus is a Kansas corporation with its principal place of

business in Wichita, Kansas, and DiPanfilo is a citizen and resident of Canada. Marcus alleges that in 1999, Marcus and DiPanfilo entered into an agreement ("Marcus Agreement") whereby DiPanfilo agreed that he would act as Marcus' agent for purchases and sales of food products for the account of and on behalf of Marcus. Marcus states that DiPanfilo initiated the negotiations of the Marcus Agreement by placing telephone calls to Marcus in Wichita, Kansas. On at least three occasions, DiPanfilo traveled to Marcus' main office in Wichita where Marcus provided DiPanfilo with advice and training in sales, management, information technology, and problem solving.

Pursuant to the Marcus Agreement, Marcus and DiPanfilo agreed that DiPanfilo would share in 45% of the net profit and 45% of the net losses after all expenses on each of DiPanfilo's sales transactions on behalf of Marcus. During the course of the Marcus Agreement, Marcus conducted the transactions resulting in the provision of capital for Defendant's purchase of product. These transactions took place in Marcus' main office in Wichita, Kansas. Marcus also paid DiPanfilo his agreed share of revenues from Marcus' main office in Wichita.

Marcus claims that DiPanfilo purchased product, for Marcus' account, and caused the product to be stored at Coolbridge Cold Storage in Quebec, Canada until March, 2009. Since March, 2009, DiPanfilo facilitated the transfer of the product out of Coolbridge Cold Storage facility without authorization from Marcus, without disclosing the fact of such transfer. Marcus states that by virtue of the fiduciary relationship from DiPanfilo to Marcus, DiPanfilo had an obligation to refrain from transferring product without Marcus' knowledge or authorization and that it has been damaged in the amount of $12,774.

As of July, 2009, Marcus alleges that it has incurred net losses in sales transactions wherein DiPanfilo sold product to two customers in the amount of $86,309. Pursuant to the Marcus

Agreement, Marcus states that DiPanfilo owes 45% of the loss or $38,839. In addition, Marcus alleges that as of August, 2009, Marcus incurred net losses in closed sales transactions effected by DiPanfilo, and DiPanfilo's share of those net losses amounts to $155,972. Pursuant to the Marcus Agreement, Marcus claims that DiPanfilo is responsible and liable to Marcus for that amount and DiPanfilo has refused to make payment. Marcus brings two claims: (1) breach of contract in the amount of $194,811; and (2) fraud and breach of fiduciary duty in the amount of $12,774. The amount totals $207,585.

A summons with the complaint attached was delivered to DiPanfilo in Toronto, Ontario, Canada on September 9, 2009. On October 9, 2009, the Clerk entered an Entry of Default, and on October 14, 2009, default judgment was entered pursuant to Fed. R. Civ. P. 55(b)(1) in favor of Plaintiff in the amount of $207,585.[1] DiPanfilo never received personal notification of the Default Judgment.

On March 23, 2010, DiPanfilo filed this motion. DiPanfilo attached an affidavit in which he states that he is a citizen of Canada. He asserts that he was bewildered when he received the paperwork that ended up being the Summons and Complaint. After being served, DiPanfilo first sought counsel licensed in both Ontario and Kansas to advise him, but he was unsuccessful. He then started a search in Wichita, Kansas, but several firms had a conflict of interest. In mid-December, DiPanfilo located his current counsel and learned that a Default Judgment had been taken against him in mid-October.

---

[1] Plaintiff filed an Application for Clerk's Entry of Default pursuant to Fed. R. Civ. P. 55(b)(1). Fed. R. Civ. P. 55(b)(1) provides: "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk–on the plaintiff's request, with an affidavit showing the amount due–must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."

DiPanfilo states that his company, Americana Meat Purveyors, had an agency relationship with Marcus since 1999 and acknowledges that he was an independent contractor for Marcus for approximately ten years. DiPanfilo contends that Howard Marcus, one of the owners of Marcus, contacted him to work as an agent.

Over the course of ten years, DiPanfilo asserts that he worked entirely in Toronto and that he purchased and sold meat products as an agent of Marcus. He reported his sales and confirmations through Marcus' software program from his computer in Toronto. DiPanfilo claims that none of his customers were located in Kansas. He alleges that he only traveled to Wichita, Kansas on two occasions, one to attend a wedding of a colleague in 2005, and one for business in 2008. DiPanfilo contends that if anyone breached the agreement between him and Marcus, it was Marcus and that Marcus has not mitigated its damages and has waived any claim against him.

Plaintiff's response attached the affidavit of Rick Finney, Marcus' Controller. Finney avers that DiPanfilo negotiated the terms of his agency relationship directly with Howard Marcus, who participated in the negotiations from Wichita, Kansas. He states that oversight of DiPanfilo's activities came exclusively from Marcus' headquarters in Wichita and that DiPanfilo was answerable to several individuals in the Wichita office.

Finney avers that DiPanfilo engaged in telephone and email communications with Marcus' headquarters in Wichita on a monthly and sometimes weekly and daily basis because he routinely communicated about prospective sales, prospective customers, credit approvals, accounts receivables, and payable issues. Marcus reimbursed DiPanfilo for his office rent and office expenses that he kept in Canada, and DiPanfilo submitted those expenses by means of mail, email, or fax to the Wichita office. In addition, DiPanfilo's expense reimbursements and commissions came from

Wichita.

Defendant DiPanfilo moves to set aside the entry of default and default judgment, dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (4), and (5), or in the alternative, to permit him time to file a responsive pleading.

## II.  Analysis

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Because a default judgment has already been entered in this case, it is appropriate to proceed under Rule 60(b).[2]  Under Fed. R. Civ. P. 60(b), a court may relieve a party from a final judgment for several reasons including "mistake, inadvertence, surprise, or excusable neglect" or if "the judgment is void."[3]

### *Federal Rule of Civil Procedure 60(b)(4) - Void Judgment*

Defendant argues that the judgment is void because the Court lacks personal and subject matter jurisdiction.  With respect to personal jurisdiction, Defendant asserts that service was improper under the Hague Convention and therefore the Court did not properly obtain personal jurisdiction and that personal jurisdiction is inappropriate as Defendant did not have minimum contacts with the forum state.

Under Fed. R. Civ. P. 60(b)(4), a judgment is void if the court did not have the power to enter it.[4]  "A default judgment in a civil case is void if there is no personal jurisdiction over the defendant. And service of process [under Fed. R. Civ. P. 4] provides the mechanism by which a

---

[2]"[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garberg & Associates, Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n. 6 (10th Cir. 1997).

[3]Fed. R. Civ. P. 60(b)(1) and (4).

[4]*Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000).

court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of a party served."[5]  Furthermore, "without subject matter jurisdiction an entry of a default judgment would be erroneous."[6]

**Service of Process**

Defendant asserts that Plaintiff did not comply with Articles 3, 5, 6, 8, or 9 of the Hague Convention and therefore did not properly serve him.   Defendant also asserts that even if informal service is permitted under the Hague Convention, it is unknown whether the process server was a "competent person" as required by Article 10(b).

Fed. R. Civ. P. 4(f) governs service on individuals in a foreign country. It provides that an individual may be served "by any internationally agreed means of service that is reasonable calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."[7] The Hague Convention is applicable in "all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."[8]  Because both the United States and Canada are parties to the Hague Convention, service of process is governed by the convention.

---

[5]*Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (internal quotations and citations omitted).

[6]*Williams  v. Swanson*, 57 F. App'x 784, 786 (10th Cir. 2003); *see also HFR, Inc. v. Hildyard*, 2007 WL 4374174, at *2 (D. Kan. Dec. 13, 2007) (citing *United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2000)).

[7]Fed. R. Civ. P. 4(f)(1).

[8]*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (citing the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969], 20 U.S.T.361, 362, T.I.A.S. No. 6638))**.**

There are several ways to accomplish service under the Hague Convention. The primary method of service is for a party to mail process to the Central Authority, and the Central Authority then effects service on the individual or corporation according to local law.[9] However, service of process may also be effected in other ways and may be effected informally provided that the country does not object to that method.[10]

Article 10 of the Hague Convention states:

> Provided the State of destination does not object, the present Convention shall not interfere with . . . (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through judicial officers, officials or other competent persons of the State of destination.

In *Dimensional Communications, Inc. v. OZ Optics Limited*,[11] the United States District Court of the District of New Jersey discussed service of process on a Canadian corporation. The court refused to quash service under Fed. R. Civ. P. 12(b)(5) and found that personal service of the summons and complaint was valid under Article 10(b) of the Hague Convention. In finding that the plaintiff complied with the Hague Convention when it used a process server in Ontario to personally effect service on the vice-president of defendant's company, it stated that "Canada has not availed itself of the opportunity, as provided under Article 21, to object to Article 10(b)'s service provision."[12] In addition, the court stated that "[c]ourts have also looked to the internal service rules of the destination State to determine whether that State would object to the particular method of

---

[9]Hague Service Convention, 20 U.S.T. 361; *see also Inversora Murten, S.A. v. Energoprojekt Holding Co.,* 2010 WL 1378281, at *4 (D. Colo. Mar. 31, 2010).

[10]20 U.S.T. 361; *see also DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 288 (3d Cir. 1981).

[11]218 F. Supp. 2d 653 (D.N.J. 2002).

[12]*Id.* at 656.

service utilized under Article 10."[13]  The court then determined that service complied with Ontario's local rules and that Canada would not object to the method of service.[14]

This Court agrees with the District of New Jersey court for substantially the same reasons as stated in its order.[15]   As noted, Canada has not objected to service under Article 10(b) and affirmatively states that it will not object to service under Article 10(b). "On accession, Canada has not declared to object to methods of service of Article 10, sub-paragraphs b) and c)."[16]  With respect to Ontario's civil procedure rules for serving an individual, it provides that where a document is to be served personally, "the service shall be made on an individual, other than a person under disability, by leaving a copy of the document with the individual."[17]

Here, Defendant was personally served with the summons and complaint by a process server. Hamza Balata, the process server, signed an affidavit that she received the summons on September 8, 2009 and personally served Defendant on September 9, 2009 at his address in Toronto, Ontario. Plaintiff filed this Proof of Service with the Court on October 1, 2009.

With respect to Defendant's argument as to the competency of the process server under Article 10(b) of the Hague Convention, this same argument was made and rejected by the New Jersey court in *Dimensional Communications*.  The District of New Jersey, relying on a case from

---

[13]*Id.* (citing *Hunt's Pier Assoc. v. Conklin*, 156 B.R. 464, 470 (Bankr. E.D. Pa. 1993)).

[14]*Id.*

[15]Although the case in New Jersey involved a corporation, there is no real distinction regarding service on a corporation and individual.  In addition, this Court considered service on an individual under Canada law.

[16]*See* Hague Conference on Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extradjudicial Documents in Civil or Commercial Matters, http://www.hcch.net/index_en.php?act=status.comment&csid=392&disp=resdn  (last visited October 4, 2010) and http://www.hcch.net/index_en.php?act=authorities.details&aid=248 (last visited October 4, 2010). *See also Dimensional Communications*, 218 F. Supp. 2d at 656.

[17]Rules of Civil Procedure, R. 16.02(1)(a).

the Court of International Trade, considered both federal law and Canada's internal laws of civil procedure.[18] It reasoned that Canada's civil procedure laws were expansive and flexible as to whom was authorized to effect service of process, and the language of Canada's accession did not limit service by process servers.[19]  In addition, it stated that numerous other courts have found process servers to be competent in other States, and "[n]o court holds service under Article 10(b) by a process server invalid in Canada.[20] Ultimately, the court found that a process server was competent to effect service of process in Canada.

Here, Defendant does not argue that he was not given the summons and the complaint by a process server.  There is no argument or evidence that the process server was not at least 18 years old, but rather Defendant argues that the Proof of Service makes no reference that the process server was at least 18 years old and not a party to the lawsuit.  Presumably, Defendant is in the position to opine as to whether the process server was not 18 years old because he was personally served by this individual.  In sum, there is no evidence that the process server was not competent to serve process.

This Court again agrees with the District of New Jersey and for substantially the same reasons, finds that a process server is competent to effect service in Canada.  Accordingly, service of process on a Canadian citizen under Article 10(b) of the Hague Convention by a process server is authorized.

---

[18]*Dimensional Communications*, 218 F. Supp. 2d at 658-59 (applying *United States v. Islip*, 18 F. Supp. 2d 1047 (CIT 1988)).

[19]*Id*. at 659.

[20]*Id*.

Defendant additionally contends that the Court was not permitted to enter default judgment against him pursuant to Article 15 of the Hague Convention because he was allowed a period of time not less than six months to appear. Plaintiff asserts that this a misreading of the plain language of Article 15.

Article 15 provides:

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that -

(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

(b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled -

(a) the document was transmitted by one of the methods provided for in this Convention,

(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

In this case, the summons and complaint were delivered to Defendant pursuant to Article 10(b) of the Hague Convention. As the Court determined above, this is an appropriate way to serve

process in Canada; therefore, this is "another method provided for by this Convention" under Article 15(b).[21] Plaintiff then filed a proof of service with this Court indicating that Defendant had been personally served.

Pursuant to Article 15, if it is established that subsection (a) or (b) was met and "the service or the delivery was effected in sufficient time to enable the defendant to defend," judgment may be given.[22] The Summons personally given to Defendant on September 9, 2009 stated that a lawsuit had been filed and that Defendant must serve an answer or motion within 20 days. Defendant did not do so by September 29, 2009, and Plaintiff filed its application for entry of default on October 7, 2009 and application for default judgment on October 12, 2009. It appears that service was effected in sufficient time for Defendant to defend.

The Court finds it unnecessary to consider the second portion of Article 15, and the six month waiting period, because it is only applicable if "no certificate of service or delivery has been received." As the Court received the proof of service before entering the judgment and the Court has determined that service was proper under the Hague Convention, the six month waiting period is inapplicable.

**Personal Jurisdiction**

Defendant asserts that the Court failed to properly determine whether it had personal jurisdiction over him and that personal jurisdiction does not exist. Defendant contends that the Court does not have personal jurisdiction because he did not submit to jurisdiction and did not have

---

[21]As noted above, it also appears that service complied with Ontario, Canada's civil procedure laws and therefore, Article 15(a) would be applicable in that "the document was served by a method prescribed by the internal law of the State . . . ."

[22]*See Gould Entertainment Corp. v. Bodo*, 107 F.R.D. 308, 309-10 (S.D.N.Y. 1985) (finding that plaintiff had submitted proof of service under Article 15(b) of the Hague Convention and therefore it was inappropriate to set aside default judgment).

minimum contacts with Kansas. Stating that it would offend the notions of fair play and substantial justice to require a Canadian citizen to come to Kansas to litigate matters that have no nexus to Kansas other than Plaintiff's location in Kansas, Defendant argues that this Court should not find personal jurisdiction.

In addition, Defendant asserts that it is Plaintiff's burden to establish personal jurisdiction over him. Plaintiff agrees and states that prior to trial if the defendant challenges personal jurisdiction, the party bringing the claim bears the burden of proving that the exercise of personal jurisdiction is proper. Although the Tenth Circuit has not determined whose burden it is to establish personal jurisdiction on a motion to set aside a default judgment,[23] because both parties assert that it is Plaintiff's burden, the Court will apply this standard.

Generally, a plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that personal jurisdiction over the defendant is appropriate.[24] In a pre-trial motion to dismiss, such as when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[25] Once the plaintiff makes a prima facie showing, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[26]

---

[23]*See Drexler v. Kozloff*, 2000 WL 376608, at *4 n. 1 (10th Cir. April 13, 2000) (stating that it does "not here decide the question of who bears the burden of establishing whether *in personum* jurisdiction existed over a defendant in a proceeding brought pursuant to Rule 60(b)(4) to set aside a default judgment on the ground that it is void for lack of such jurisdiction.").

[24]*Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[25]*Id.*

[26]*Id.* at 1227 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))).

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'"[27] "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[28] "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[29]

In a diversity action, "personal jurisdiction over a nonresident defendant is determined by the law of the forum state."[30] "The proper inquiry is . . . whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution."[31] Courts may proceed directly to the due process issue because the Kansas long-arm statute is construed liberally.[32]

---

[27]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).

[28]*Id.*

[29]*Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). This case is in a different procedural posture than a typical motion to dismiss on the basis of personal jurisdiction because an entry of default and default judgment have been entered. After default is established, the well-pleaded factual allegations are taken as true, except for the allegations relating to damages. *DeMarsh v. Tornado Innovations, L.P.*, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009). However, this does not change the Court's analysis in this case as Plaintiff submitted an affidavit supporting the contentions in the complaint when Defendant challenged several facts. As noted above, factual disputes are construed in Plaintiff's favor when there are conflicting affidavits.

[30]*Caldwell-Baker Co. v. S. Illinois Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002).

[31]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994).

[32]*Id.* at 1305.

The Due Process Clause allows the exercise of personal jurisdiction over a non-resident defendant "only so long as there exist 'minimum contacts' between the defendant and the forum state."[33] "The 'minimum contacts' standard may be met "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate' to those activities."[34] This involves a two step inquiry: (1) whether "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there;'"[35] and (2) "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[36]

### a. Minimum Contacts

The minimum contacts inquiry requires the Court to determine "whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."[37] "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."[38] "The unilateral activity of those who claim some relationship with a

---

[33]*OMI Holdings*, 149 F.3d at 1090 (citation omitted).

[34]*Id.* at 1091 (quoting *Burger King*, 471 U.S. at 472).

[35]*Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[36]*Id.* at 1075-76 (citing *OMI Holdings*, 149 F.3d at 1091)).

[37]*OMI Holdings*, 149 F.3d at 1091 (quotations and citations omitted).

[38]*Rambo v. Am. S. Ins., Co.,* 839 F.2d 1415, 1420 (10th Cir. 1988) (citation omitted).

nonresident defendant cannot satisfy the requirement of contact with the forum state."[39]

In this case, Plaintiff and Defendant entered into an agreement in which Defendant agreed to act as Plaintiff's agent for purchases and sales of food products. Although Defendant contends that Plaintiff initiated the agreement, Marcus contends that Defendant initiated the negotiations of the agreement, and the Court must view conflicting evidence in Plaintiff's favor. Regardless, Defendant had an agency relationship with Plaintiff and was an independent contractor for Plaintiff for approximately ten years.

During the course of this agency agreement, Plaintiff paid Defendant his office rent, expenses, reimbursements, and commissions from its Wichita, Kansas office. Defendant communicated with individuals at Plaintiff's offices in Wichita either by phone or email on a monthly, and sometimes weekly and daily, basis about prospective sales and customers. Although none of Defendant's customers were located in Kansas, this dispute arises from the agreement between Defendant and Plaintiff regarding the breakdown of profit and losses on Defendant's sales transactions on behalf of Plaintiff. This is not a case of unilateral activity on the part of Plaintiff, and it is an entirely different relationship than the vendor/customer relationship discussed in Defendant's cases in which there are only one-time, unconnected business transactions. In contrast, in this case, Defendant affirmatively agreed to act as an agent for a company headquartered and operated in Kansas, and he sold products on an ongoing basis for approximately ten years on behalf of Plaintiff. These transactions required Defendant to be in daily, weekly, and monthly contact with individuals at the Wichita, Kansas office. Accordingly, the Court finds that the exercise of personal jurisdiction over Defendant is proper because Defendant had an agreement with Plaintiff requiring

---

[39]*Pehr*, 874 F. Supp. at 320 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

partial performance in Kansas. Furthermore, Defendant had minimum contacts with Kansas, and Defendant should have reasonably anticipated being haled into court in the State of Kansas.

### b. Fair Play and Substantial Justice

Because Plaintiff has made a prima facie showing of minimum contacts, Defendant must establish a "compelling case" that jurisdiction would be unreasonable.[40] The determination of fair play and substantial justice "requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state."[41] To assess reasonableness, there are five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[42]

"[T]he reasonableness prong of the due process inquiry evokes a sliding scale; the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."[43] Here, because Defendant was Plaintiff's agent, the Court concludes that a strong showing of minimum contacts has been made.

---

[40]*See AST Sports Science, Inc. v. CLF Distrib., Ltd.*, 514 F.3d 1054, 1063 (10th Cir. 2008); *see also Thermal Components,* 98 F. Supp. 2d at 1227.

[41]*TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

[42]*Id.*

[43]*Benton*, 375 F.3d at 1079 (citations omitted).

Defendant asserts that it would not be convenient or equitable for Defendant to come to Kansas to litigate these issues; however, Defendant does not specifically address these factors. As noted, it is Defendant's burden to establish a compelling case against jurisdiction, but the Court will nevertheless briefly address these factors.

The Court recognizes that concern is heightened with respect to the first factor when the dispute involves a defendant from another country;[44] therefore, this factor weighs in favor of Defendant. As to factors two and three, Plaintiff has an interest in receiving convenient relief and Kansas has an interest in protecting its citizens and business when they enter into agreements. Kansas appears to be the most efficient forum as the agreement was negotiated here, and the dispute is related to the agreement. As such, these two factors weigh in favor of Plaintiffs.

With respect to factors four and five, these appear to be neutral factors or slightly in favor of Plaintiff because it appears that the most efficient resolution of the case would be to allow it go forward in Kansas rather than start anew in a foreign jurisdiction. In sum, the factors are in favor of Plaintiff, and Defendant has not established a compelling case that personal jurisdiction would be unreasonable. As such, the Court finds that it has personal jurisdiction.

**Subject Matter Jurisdiction**

Defendant also argues that this Court does not have subject matter jurisdiction because it is questionable whether Plaintiff can satisfy the amount in controversy requirement. "When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover at least

---

[44]*OMI Holdings*, 149 F.3d at 1096.

[$75,000].”[45]  “In other words, the plaintiff must demonstrate that it is not legally certain that the claims are less than the jurisdictional amount.”[46]  Here, Plaintiff pleaded damages of $207,585, breaking out specifically the claimed damages.  As such, it is not legally certain that Plaintiff's claims would be less than $75,000.[47] Accordingly, Plaintiffs have demonstrated that their claims exceed the jurisdictional amount, and this Court has subject matter jurisdiction.[48]

### Federal Rule of Civil Procedure 60(b)(1) - Excusable Neglect

Fed. R. Civ. P. 60(b) provides that “[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.”  A motion to set aside judgment on the basis of excusable neglect must be made within a reasonable time and no more than a year after the entry of judgment.[49]  However, “a motion is not timely merely because it has been filed within one year of the judgment.”[50]  The court should consider “the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the

---

[45]*Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994).

[46]*HFR, Inc.,* 2007 WL 4374174, at *4.

[47]The Court also notes that default judgment has already been entered in the sum certain amount of $207,585.

[48]With respect to Defendant's venue argument, Defendant cannot raise this argument at this time. “[I]f a party is in default by failing to appear or to file a responsive pleading, defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally.” *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). “Defects in venue do not affect the court's power and a valid default judgment may be entered by a court notwithstanding the defect.” *Id.* The Court addressed the service of process, personal jurisdiction, and subject matter jurisdiction issues because these issues determine whether the judgment is void. Venue does not affect this analysis.

[49]*See* Fed. R. Civ. P. 60(c)(1). There is no similar time requirement for motions brought to set aside a judgment as void pursuant to Fed. R. Civ. P. 60(b)(4).

[50]*White v. Am.Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990).

grounds relied upon, and prejudice to other parties." [51]  While there is a preference of resolving

disputes on their merits, "a workable system of justice requires that litigants not be free to appear

at their pleasure."[52]

The party moving to set aside the default judgment has the burden of pleading and proving

excusable neglect.[53]  Factors in determining whether excusable neglect exists include: "the danger

of prejudice to the [opposing party], the length of the delay and its potential impact on judicial

proceedings, the reason for the delay, including whether it was within the reasonable control of the

movant, and whether the movant acted in good faith."[54]  The Court should resolve doubts in favor

of the party seeking relief.[55]  In addition, after establishing excusable neglect, the movant must

demonstrate he has a meritorious defense.[56]

The Court scheduled a hearing with respect to excusable neglect and heard counsel's

arguments. [57]  Additionally, the Court requested supplemental authorities from both parties regarding

this matter, which have been received and reviewed.  As noted previously, Defendant received the

summons and complaint in Toronto, Canada, on September 9, 2009 and claims he was "bewildered"

by it.  Defendant claims that in response, he sought counsel licensed to practice in both Ontario and

---

[51]*Mullin v. High Mountain*, 182 F. App'x 830, 833 (10th Cir. 2006) (citing *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

[52]*Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

[53]*See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990).

[54]*Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

[55]*Id.*

[56]*See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 578 n. 2 (10th Cir. 1996).

[57]Neither party presented testimony or other new evidence.

in Kansas, but was unsuccessful. Defendant offered no reason why he reasonably required counsel licensed in Ontario to defend this suit. Defendant then claimed that, apparently abandoning his search for dual-licensed attorneys, he searched for counsel in Wichita to represent him, but he claims that his search was impeded or delayed because several firms had conflicts of interest.[58] Defendant's instant counsel was hired in mid-December, and it informed Defendant that Default Judgment had been taken two months prior. The motion to set aside Default Judgment was filed three months later. No substantive or compelling reason was offered for this delay of three months, even though the Court specifically inquired about it.[59]

The relief available under Rule 60(b) is "an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule. It is not a substitute for appeal, and must be considered with the need for finality of judgment."[60] The Rule "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'"[61]

---

[58]At the hearing, Plaintiff's counsel challenged the accuracy of this statement, alleging that Plaintiff has not had representative relationships with that many Wichita law firms. Defendant's counsel recited to the Court the name(s) of law firms whom Defendant had unsuccessfully contacted for representation. Neither party presented any evidence on this matter, however, so the Court will only consider Defendant's affidavit.

[59]Court: Let me address, before you get to that, you've talked about the three months more or less from when he received the summons until he found Wichita counsel. Can you talk about the three months then after counsel was retained before any pleading was filed in this case?

Ms. Dengler: In that respect I think it probably has to do with doing the work, getting everything ready, getting the facts involved to prepare the affidavit, and making sure he could approve the affidavit. There were times when I would try to locate him and he was not available. He does travel some. He does have access to the Internet and a phone. By the same token, he's trying to work and earn his money in order to pay his expenses, including legal fees. So I think that would be what the issue is.

[60]*Cessna Fin. Corp.*, 715 F.2d at 1444 (citing *Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979)).

[61]*Id*. (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (emphasis in original)).

DiPanfilo is not an unsophisticated businessman.  He is in the business of acting as an agent for the commercial sales of food products.  By his own testimony he travels internationally in the conduct of his business.  He does not dispute receiving the summons and attached complaint which on its face clearly stated, at the beginning, that a lawsuit had been filed against him and that within 20 days of service of the summons on him he must serve an answer or a motion, and that failure to respond will result in judgment by default being entered against him.  The language is plain and simple, and although DiPanfilo is not a United States citizen, neither the concept simply expressed on the first page of the summons nor the language in which it was expressed should have been difficult concepts for a citizen of Canada to grasp.  The Court cannot give credence to his assertion of being "bewildered."

Moreover, and even assuming that Defendant was initially confused by the service of summons upon him, he has presented no reason or justification to excuse his delay of nearly three months to locate counsel to respond to this suit.  Granted, he was a Canadian seeking counsel in another country.  But given the modern availability of information on the world wide web, there is no reason shown to the Court nor imaginable by it why a search for Kansas counsel would require three months, particularly for one such as Defendant who had traveled to Kansas and who conducted at least some of his business internationally.  Least understandable of all is why, after he located qualified and competent Kansas counsel, and after that counsel informed him of the existence of a default judgment order against him, he and his counsel took nearly another three months to file any request for relief before this Court.   The most that the Court can discern is that Defendant was not prompt in responding to his counsel's requests and inquiries – apparently, this lawsuit was simply not a high enough priority for him.  "Carelessness by a litigant or his counsel does not afford a basis

for relief under Rule 60(b)(1)."[62]

The burden is upon the movant to have the judgment set aside to plead and prove the excusable neglect.[63]  Defendant has not met that burden.  His motion for relief pursuant to Fed. R. Civ. P 60 is denied.

**IT IS ACCORDINGLY ORDERED** that Defendant Robert DiPanfilo's Motion to Set Aside Default and Default Judgment and Dismiss the Case (Doc. 11) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 5th day of October, 2010.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[62]*Pelican Prod. Corp.,* 893 F.2d at 1146 (citing *Ben Sager Chems. Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977)).

[63]*Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp., Inc.*, 837 F.2d 423, 426 (10th Cir. 1988).